UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SUSAN P. CARR,<br><br>    Plaintiff,<br><br>vs.<br><br>CAROLYN W. COLVIN, Acting<br>Commissioner of Social<br>Security,<br><br>    Defendant. | Case No. EDCV 13-1046-JPR<br><br>**MEMORANDUM OPINION AND ORDER<br>REVERSING COMMISSIONER AND<br>REMANDING FOR FURTHER<br>PROCEEDINGS** |

**I.   PROCEEDINGS**

Plaintiff seeks review of the Commissioner's final decision denying her application for Social Security disability insurance benefits ("DIB").  The parties consented to the jurisdiction of the undersigned U.S. Magistrate Judge under 28 U.S.C. § 636(c). This matter is before the Court on the parties' Joint Stipulation, filed July 10, 2014, which the Court has taken under submission without oral argument.  For the reasons stated below, the Commissioner's decision is reversed and this action is remanded for further proceedings.

**II. BACKGROUND**

Plaintiff was born on March 19, 1958. (Administrative Record ("AR") 153.) She completed two years of college (AR 163), and she worked in inventory and quality control in warehouses (AR 158).

On January 25, 2010, Plaintiff submitted an application for DIB, alleging that she had been unable to work since April 22, 2008, because of "tremors, diabetes mellitus-insulin dependent, irritable bowel syndrome, anxiety disorder, obesity, [h]igh blood pressure, [h]igh cholesterol, depression, [h]ypothryoidism, [n]europathy shakes-[h]ands, pancretitis [sic]." (AR 146, 149.) After her application was denied initially and on reconsideration, she requested a hearing before an Administrative Law Judge. (AR 94-95.) A hearing was held on January 11, 2012, at which Plaintiff, who had a nonattorney representative, testified, as did both a medical and a vocational expert. (AR 42-76.) In a written decision issued February 23, 2012, the ALJ found Plaintiff not disabled. (AR 28-37.) On April 24, 2013, the Appeals Council denied Plaintiff's request for review. (AR 1.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such evidence as a reasonable person might accept

as adequate to support a conclusion. Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

**IV. THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

A. The Five-Step Evaluation Process

An ALJ follows a five-step sequential evaluation process to assess whether someone is disabled. 20 C.F.R. § 404.1520(a)(4); Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled

and the claim must be denied. § 404.1520(a)(4)(i). If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting her ability to do basic work activities; if not, a finding of not disabled is made and the claim must be denied. § 404.1520(a)(4)(ii). If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., Part 404, Subpart P, Appendix 1; if so, disability is conclusively presumed and benefits are awarded. § 404.1520(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal one in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[1] to perform her past work; if so, she is not disabled and the claim must be denied. § 404.1520(a)(4)(iv). The claimant has the burden of proving she is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if the claimant has no past relevant work, the Commissioner bears the burden of establishing that the claimant is not disabled because she can perform other substantial gainful work available

---

[1] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 404.1545; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).

in the national economy. § 404.1520(a)(4)(v). That determination comprises the fifth and final step in the sequential analysis. § 404.1520; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

### B. The ALJ's Application of the Five-Step Process

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since April 22, 2008, the alleged onset date. (AR 30.) At step two, she concluded that Plaintiff had the severe impairments of "morbid obesity, poorly controlled type 2 diabetes mellitus, stage 1 chronic kidney disease, possible diabetic peripheral neuropathy, irritable bowel syndrome, and essential tremor." (Id.) At step three, the ALJ determined that Plaintiff's impairments did not meet or equal any of the impairments in the Listing. (AR 31.) At step four, she found that Plaintiff had the RFC to perform light work except as follows: "stand or walk two hours out of an eight-hour day," sit with no restrictions given normal breaks, "lift 20 pounds occasionally and 10 pounds frequently," "occasionally stoop and bend," frequently perform fine and gross manipulation, never do "very fine fingering," and climb stairs but not climb ladders, work at heights, or balance. (Id.) She also found that Plaintiff required "ready access to restroom facilities" and a temperature-controlled work environment. (Id.) Based on the VE's testimony, the ALJ concluded that Plaintiff could not perform her past work in inventory and quality control. (AR 35.) At step five, the ALJ found that Plaintiff could perform other jobs that existed in significant numbers in the national economy. (Id.) Accordingly, she found Plaintiff not disabled. (AR 36.)

**V.   DISCUSSION**

Plaintiff contends that the ALJ erred in assessing her credibility and the opinions of her treating physicians. (J. Stip. at 3.) Remand is warranted because the ALJ failed to provide clear and convincing reasons for discounting Plaintiff's credibility. Any errors in assessing the opinions of Plaintiff's treating sources were harmless, however, for the reasons discussed below.

    A.   <u>The ALJ Did Not Properly Assess Plaintiff's Credibility</u>

        1.   <u>Relevant background</u>

Plaintiff testified that she stopped working in April 2008 because she "got sick" and became blind for a few weeks from her diabetes. (AR 56.) At the time of the hearing, she claimed to be unable to work for many reasons. Tremors in her hands prevented her from holding things. (AR 57.) She could not type because her fingers would "fall off the keyboard" when she tried. (<u>Id.</u>) She became tired easily and needed to take naps. (<u>Id.</u>) She could not stand because of pain in her feet, and she could not sit because of pain in her back, legs, and feet. (<u>Id.</u>)

    Plaintiff had seizures three or four times a day despite taking Mysoline, an antiseizure medication. (AR 58.) She had a driver's license but did not drive to the hearing. (AR 55.) She drove "maybe once every two weeks," to get medication. (AR 56-57.) No doctors had told her to stop driving because of her seizures, although nurses did. (AR 57.) Her car did not have a "handicap sticker." (<u>Id.</u>) She did not know how many seizures she would have if she did not take medication. (AR 58.) Plaintiff started seeing a new doctor in June 2011, about seven

months before the hearing.  (AR 59.)  Although she told the doctor that she still had seizures while taking medication, the doctor did not change her treatment plan.  (Id.)  The doctor recommended that Plaintiff see a neurologist.  (Id.)  Although Plaintiff's medical record indicated that the seizures could be psychogenically[2] related, her doctor did not recommend that she see a psychologist or psychotherapist.  (AR 61.)

Up to three times a day, Plaintiff took tramadol[3] for her back and foot pain.  (AR 60-61.)  She also took gabapentin.[4]  (AR 64.)  The pain was a result of peripheral neuropathy and her kidneys "going bad."  (AR 60.)

During a normal day, Plaintiff would wake up, eat breakfast, watch TV, take a two-hour nap, eat dinner, and watch more TV.  (AR 62.)  The longest amount of time she could sit before needing to get up and walk was 15 or 20 minutes.  (Id.)  She could walk only 10 minutes before needing to take a break.  (AR 62-63.)  She could do some household chores, like vacuuming and cleaning the bathroom.  (AR 63.)  Plaintiff had trouble sleeping and would usually wake up about five or six times a night because of pain in her feet or legs.  (AR 63-64.)  She used to be able to shop

---

[2] "Psychogenic" means "of mental origin or causation." Stedman's Medical Dictionary 1476 (27th ed. 2000).

[3] Tramadol is prescribed to treat moderate to moderately severe pain.  See Tramadol, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a695011.html (last updated Oct. 15, 2013).

[4] Gabapentin is used to help control certain types of seizures in people who have epilepsy.  See Gabapentin, MedlinePlus, http://www.nlm.nih.gov/medlineplus/druginfo/meds/a694007.html (last updated July 15, 2011).

for groceries but stopped because of the hand tremors and inability to lift more than five pounds. (AR 67-68.)

### 2. Applicable law

An ALJ's assessment of symptom severity and claimant credibility is entitled to "great weight." See Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989); Nyman v. Heckler, 779 F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking, a result plainly contrary to 42 U.S.C. § 423(d)(5)(A)." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted).

In evaluating a claimant's subjective symptom testimony, the ALJ engages in a two-step analysis. See Lingenfelter, 504 F.3d at 1035-36. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment [that] could reasonably be expected to produce the pain or other symptoms alleged." Id. at 1036 (internal quotation marks omitted). If such objective medical evidence exists, the ALJ may not reject a claimant's testimony "simply because there is no showing that the impairment can reasonably produce the _degree_ of symptom alleged." Smolen v. Chater, 80 F.3d 1273, 1282 (9th Cir. 1996) (emphasis in original). When the ALJ finds a claimant's subjective complaints not credible, the ALJ must make specific findings that support the conclusion. See Berry v. Astrue, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or affirmative evidence of malingering, the ALJ must provide "clear and convincing" reasons for rejecting the claimant's testimony.

Lester, 81 F.3d at 834; Ghanim v. Colvin, 763 F.3d 1154, 1163 n.9 (9th Cir. 2014).

### 3. Analysis

After laying out a detailed chronology of Plaintiff's medical records, the ALJ found that her medically determinable impairments could reasonably be expected to cause the alleged symptoms but that her "statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with" her RFC. (AR 33.) Apart from this brief boilerplate statement, however, the ALJ's only reference to Plaintiff's credibility was neither clear nor convincing. The ALJ stated that "[t]he [Plaintiff's] testimony regarding her daily functioning is reasonable given her medical condition, but the severity of the alleged limitations are [sic] inconsistent with the objective medical findings." (AR 35.) The statement is ambiguous because the ALJ appears to discredit Plaintiff's testimony yet also finds it "reasonable." (Id.) Furthermore, the statement is located in the section of the ALJ's opinion addressing Plaintiff's treating physicians' opinions, not her credibility. (See AR 34-35 (paragraph begins, "As for the opinion evidence, . . . ." and ends, "The undersigned gives little weight to Dr. Erickson's opinion because . . . .").) Nowhere does the ALJ actually analyze Plaintiff's credibility. Thus, the ALJ erred by failing to give clear and convincing reasons for discounting Plaintiff's testimony. See Robbins, 466 F.3d at 884-85 (reversing Commissioner when ALJ did not provide "narrative discussion" with sufficiently specific reasons for discounting claimant's statements); Coronado v. Astrue, No. 1:10-

cv-00594-AWI-SKO, 2011 WL 3348066, at *8 (E.D. Cal. Aug. 2, 2011) (finding ALJ's reasons for discrediting claimant "ambiguous" and not clear and convincing because they "overlap[ped] and blend[ed]" with discussion of physician opinions); SSR 96-7P, 1996 WL 374186, at *2 (July 2, 1996) ("It is not sufficient for the adjudicator to make a single, conclusory statement that the individual's allegations have been considered or that the allegations are (or are not) credible." (internal quotation marks omitted)).

Furthermore, the error was not harmless. The ALJ ultimately concluded that Plaintiff was not disabled (AR 36) and had the RFC to perform light work with some restrictions (AR 31). Although some evidence in the record undermined Plaintiff's testimony — for example, clinical tests showed no physiological basis for her seizures (AR 301 (CT scan and EEG), 379 (no somatoform[5] disorder diagnosis), 412 (same), 483-84 (48-hour ambulatory EEG)) — the Court cannot say that the ALJ's error was "inconsequential to the ultimate disability determination." See Molina, 674 F.3d at 1115 (internal quotation marks omitted). The nature and degree of Plaintiff's seizures and tremors were central to the ALJ's RFC assessment and ultimate conclusion that Plaintiff was not disabled.

Plaintiff is entitled to remand on this ground.

---

[5] A somatoform disorder is characterized by physical symptoms suggesting physical disorders but for which there "are no demonstrable organic findings or known physiologic mechanisms." Stedman's Medical Dictionary 528 (27th ed. 2000).

B. <u>The ALJ Properly Assessed the Medical Opinion Evidence</u>

1. <u>Relevant background</u>

Plaintiff was hospitalized at Arrowhead Regional Medical Center in September 2009. (AR 299.) Dr. Yen Lai was one of several physicians who saw her for follow-up care after she was discharged. (<u>See</u> AR 286, 292.) On December 12, 2009, Dr. Lai completed a form entitled "Claim for Disability Insurance Benefits - Doctor's Certificate." (AR 284.) She diagnosed tremors and insulin-dependent diabetes mellitus and stated that Plaintiff had "been incapable of performing [her] regular or customary work" since May 1, 2008. (<u>Id.</u>) Dr. Lai noted that Plaintiff suffered a "severe" "resting tremor" in both hands, which made her "unable to hold, lift, . . . write legibly" or "type." (<u>Id.</u>)

On December 28, 2011, "Dr. Erickson"[6] completed forms entitled "Diabetes Mellitus - 9.08" (AR 543-46) and "Exertional Limitation Questionnaire" (AR 547). Plaintiff's first visit to his office was on August 6, 2011. (AR 546.) Erickson diagnosed type 2 diabetes mellitus, anemia, hypothyroidism, hypertension, hyperlipidemia, hypertriglyceridism, and essential tremors. (AR 543.) He noted evidence of diabetic neuropathy affecting Plaintiff's lower extremities and that she "has or presents [with] tremors" in her "upper ext[remities] (Hands)," which significantly interfered with her "[u]se of the fingers, hands,

---

[6] The record does not identify Erickson's first name or sex. For ease of discussion, male pronouns are used. Further, as discussed below, Erickson does not appear to be a doctor but rather a nurse practitioner. (<u>See, e.g.</u>, AR 546-47 (showing "NP-C" next to signatures).)

and arms." (AR 543-44.) He also noted that Plaintiff had symptoms of polyuria,[7] recurrent hyperglycemic reactions, fatigue, numbness and tingling in the lower extremities, and depression. (AR 545.)

On the "Exertional Limitation Questionnaire," Erickson opined that Plaintiff was "incapable of sedentary work on a sustained and full-time basis." (AR 547.) When asked whether Plaintiff's symptoms and limitations had existed at the same or similar degree of severity since April 22, 2008, the alleged onset date of disability, Erickson circled "No" and wrote August 6, 2011, as the applicable date, which was the "first time our office [had] seen [Plaintiff]." (AR 546.)

Dr. Samuel Landau, the agency's medical expert, testified that Plaintiff had the following functional restrictions:

> Standing and walking limited to two hours out of eight. There's no limitation to sitting with normal breaks, such as every two hours. Lifting and carrying are limited to 10 pounds frequently, 20 pounds occasionally. She can occasionally stoop and bend. She can climb stairs, but she can't climb ladders, work at heights or balance.
>
> She can do gross manipulation, such as opening drawers and carrying files. She can do coarse to fine manipulation, such as keyboarding, but not very fine manipulation, such as precise dial adjustment.

---

[7] Polyuria is the "excessive excretion of urine." Stedman's Medical Dictionary 1426 (27th ed. 2000).

> . . . .
>
> . . . Her work environment should be air conditioned for temperature control, and she should have ready access to a rest room facility.

(AR 53.)

### 2. Applicable law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did not treat or examine the plaintiff. Lester, 81 F.3d at 830. A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is generally entitled to more weight than that of a nonexamining physician. Id.

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen, 80 F.3d at 1285. If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. § 404.1527(c)(2). If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors. § 404.1527(c)(2)-(6).

When a treating or examining physician's opinion is not

contradicted by other evidence in the record, it may be rejected only for "clear and convincing" reasons. See Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting Lester, 81 F.3d at 830-31). When a treating or examining physician's opinion is contradicted, the ALJ must provide only "specific and legitimate reasons" for discounting it. Id. The weight given an examining physician's opinion, moreover, depends on whether it is consistent with the record and accompanied by adequate explanation, among other things. § 404.1527(c)(3)-(6).

When an ALJ discounts an opinion provided by a nonacceptable medical source, he need only provide "germane" reasons. Molina, 674 F.3d at 1111. Furthermore, "[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings." Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); accord Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004).

### 3. Analysis

In determining Plaintiff's RFC, the ALJ gave "great weight" to Dr. Landau's assessment but "little weight" to Erickson's opinion because the latter was "based on a short treatment period" and was "not supported by the evidence as a whole." (AR 35.) She did not directly address Dr. Lai's opinion.

#### a. *"Dr. Erickson"*

Erickson opined that Plaintiff was incapable of sedentary work on a sustained and full-time basis. (AR 547.) The record contains notes from seven visits to Erickson's office, from

August 2011 to January 2012, six of them predating his December 28, 2011 opinion. (See AR 530-36, 548.)  Having seen Plaintiff six times in five months and reviewed her laboratory test results, Erickson qualifies as a treating source. See § 404.1502 ("We may consider an acceptable medical source who has treated or evaluated you only a few times . . . to be your treating source if the nature and frequency of the treatment or evaluation is typical for your condition(s).").  The abbreviation "NP-C" next to Erickson's signature, however, suggests that he was a nurse practitioner, not a physician. (AR 546-47.)  It appears that Plaintiff's treating physician at the Primary Care Medical Group of Inland Empire — where she saw Erickson — was Dr. Sanjay Kudtarkar. (See AR 511 (discharge report naming "Sanjay S. Kudtarkar, M.D." as primary care provider).)  Although a nurse practitioner can be considered a medically acceptable source if he worked under a physician's close supervision, they generally do not qualify as medically acceptable sources. See § 404.1513(d)(1); Molina, 674 F.3d at 1111 & n.3.  Because the record does not show that Erickson worked under the close supervision of Dr. Kudtarkar or another physician, he does not qualify as a medically acceptable source.  Thus, any failure of the ALJ to give specific and legitimate reasons for rejecting the opinion of Erickson, whom she apparently believed to be a medical doctor, was necessarily harmless. See Carmickle, 533 F.3d at 1162 (error harmless when inconsequential to ultimate nondisability determination).  The ALJ was required to give only "germane" reasons for rejecting Erickson's opinion, see Molina, 674 F.3d at 1111, and she did so.

The ALJ first noted the short treatment period. (AR 35); cf. § 404.1527(c)(2)(i) ("[l]ength of the treatment relationship" is relevant factor in assessing opinion of treating source); Edlund v. Massanari, 253 F.3d 1152, 1157 & n.6 (9th Cir.) (as amended Aug. 9, 2001) (same). Although five months of treatment may have been adequate to gauge the effect of Plaintiff's symptoms on her functioning, they amount to only a small portion of her entire treatment period, given that she had begun complaining of seizures and tremors over two years earlier (see AR 299) and had complained of her other symptoms since 2008, the alleged onset date (see AR 370-71 (emergency room visit on Apr. 16, 2008, for diabetes complications, hyperglycemia, and hypothyroidism)). The short treatment period was a germane reason to reject Erickson's opinion.

The ALJ also properly noted that Erickson's opinion was not supported by the evidence as a whole. (AR 35.) The ALJ noted that the function reports and consultative psychologists' evaluations showed that Plaintiff had "little difficulty with activities of daily living." (Id.; see AR 377 (able to do household chores and errands, shop, cook, dress, and bathe), 409 (bathing and dressing "not impaired" and household chores "somewhat impaired").) She noted that there was "only a psychogenic basis for the seizures and neither consultative psychological examiner found the claimant had a somatoform disorder." (AR 34-35; see AR 301 (CT scan of head and EEG in Sept. 2009 showed normal results), 379 (psychologist diagnosed unspecified mood disorder but not somatoform disorder despite Plaintiff's two seizures during Mar. 2010 examination), 412 (same

diagnosis by different psychologist in Sept. 2010), 483-84 (48-hour ambulatory EEG recording in Aug. 2010 showed no epileptiform discharges or electrographic seizures despite frequent tremors), 489 (emergency-room physician noted normal motor strength in June 2010).) Thus, inadequate evidentiary support was a germane reason to reject Erickson's opinion. Indeed, in finding Plaintiff incapable of sedentary work on a sustained and full-time basis, Erickson merely checked a box without providing additional comments in the space designated for them at the bottom of the questionnaire (AR 547), and the boxes he checked on the "Diabetes Mellitus – 9.08" form indicated only that Plaintiff's tremors resulted in "significant interference" with her "[u]se of the fingers, hands, and arms," without explanation in the designated "Please describe" section. (AR 543-44.) Thus, the ALJ properly rejected Erickson's opinion as conclusory and inadequately supported. Thomas, 278 F.3d at 957; see also Molina, 674 F.3d at 1111 (ALJ may "permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions" (internal quotation marks and alterations omitted)).

        b.   *Dr. Lai*

Although the ALJ did not explicitly address Dr. Lai's December 2009 disability certificate, she relied significantly on the opinion of Dr. Landau, who explicitly noted and considered Dr. Lai's opinion. (See AR 50.) By accepting Dr. Landau's opinion, the ALJ necessarily rejected Dr. Lai's opinion, which directly contradicted Dr. Landau on the issue of the limiting effect of Plaintiff's tremors and seizures. (Compare AR 53 with AR 284.) Further, in stating that there was "only a psychogenic

17

basis for the seizures and neither consultative psychological examiner found the claimant had a somatoform disorder" (AR 34-35), the ALJ implicitly reasoned that Dr. Lai's opinion was not supported by the evidence as a whole.

In any event, on remand the ALJ can expressly explain her reasons for apparently rejecting Dr. Lai's opinion.

### C. Remand for Further Proceedings Is Appropriate

When, as here, an ALJ errs in denying benefits, the Court generally has discretion to remand for further proceedings. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). When no useful purpose would be served by further administrative proceedings, however, or when the record has been fully developed, it is appropriate under the "credit-as-true" rule to direct an immediate award of benefits. Id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); see also Garrison v. Colvin, 759 F.3d 995, 1019-20 (9th Cir. 2014).

Under the credit-as-true framework, three circumstances must be present before the Court may remand to the ALJ with instructions to award benefits: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." Garrison, 759 F.3d at 1020. When, however, the ALJ's findings are so "insufficient" that the Court cannot determine whether the

rejected testimony should be credited as true, the Court has "some flexibility" in applying the credit-as-true rule. Connett v. Barnhart, 340 F.3d 871, 876 (9th Cir. 2003); see also Garrison, 759 F.3d at 1020 (noting that Connett established that credit-as-true rule may not be dispositive in all cases). This flexibility should be exercised "when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Garrison, 759 F.3d at 1021.

    Here, under Connett, remand for further proceedings is appropriate because the ALJ's findings concerning Plaintiff's credibility were so "insufficient" that the Court cannot determine whether Plaintiff's testimony should be credited as true, and the Court has serious doubts as to whether she is in fact disabled. Upon remand, the ALJ should also address the characterization of "Dr. Erickson" as a medical source and make findings concerning Dr. Lai's medical opinion.

## VI. CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner, GRANTING Plaintiff's request for remand, and REMANDING this action for further proceedings consistent with this Memorandum Opinion. IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment on counsel for both parties.

DATED: December 15, 2014

JEAN ROSENBLUTH
JEAN ROSENBLUTH
U.S. Magistrate Judge

---

[8] This sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."